IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

TROY MAJOR,                :
                                 :
         **Plaintiff,**       :
   **VS.**                   :
                                 :   **NO. 5:15-CV-483-MTT-MSH**
**Warden ROBERT TOOLE,** *et al.*, :
                                 :
         **Defendants.**   :
_____ :

## ORDER AND RECOMMENDATION

In accordance with the Court's previous Order, *pro se* Plaintiff Troy Major has filed a supplement to his Complaint further explaining his claims brought pursuant to 42 U.S.C. § 1983 as well as a motion to amend his initial Complaint. Plaintiff's claims are now ripe for review under 28 U.S.C. § 1915A. The undersigned has reviewed Plaintiff's submissions and finds that certain claims against Defendants Johnson, Davis, Shoemaker, Williams, Chatman, McCloud, Bishop, Toole, Paul, Powell, Logan, Bryson, Upton, Jacobs, Deloach, and Dean should proceed for further factual development. The undersigned **RECOMMENDS**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice.**

## I.     Motion to Appoint Counsel

Plaintiff has moved for the appointment of counsel. Under 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." There is, however, "no absolute constitutional right to the appointment of

counsel" in a § 1983 lawsuit. *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987) (per curiam). Appointment of counsel is a privilege that is justified only by exceptional circumstances. *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982). In deciding whether legal counsel should be provided, the Court considers, among other factors, the merits of Plaintiff's claims and the complexity of the issues presented. *Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989) (en banc).

In this case, Plaintiff has filed a *pro se* complaint on a standard § 1983 form. The Court is now required to review the Complaint to determine whether Plaintiff's allegations state a colorable legal claim. This process is routine in *pro se* prisoner actions and is thus not an "exceptional circumstance" justifying appointment of counsel. The facts stated in Plaintiff's Complaint are not complicated, and the law governing Plaintiff's claims is neither novel nor complex. Plaintiff's motion to appoint counsel (ECF No. 9) is accordingly **DENIED**.

## II.     Motion to Amend

Plaintiff has filed a motion to amend his original Complaint seeking "to add two (2) defendants" and providing significant additional factual detail regarding his assignment and continued confinement in Tier III segregation. Mot. Amend 1, ECF No. 16. Plaintiff is entitled to amend his Complaint once as a matter of course at this stage. *See* Fed. R. Civ. P. 15(a). The undersigned will accordingly **GRANT** Plaintiff's motion to amend (ECF No. 16) and will consider the allegations made in the Amended Complaint attached thereto.

**III.       Motion to Appoint Expert Witness**

Plaintiff also seeks to have the Court appoint expert witnesses.  *See* Mot. to Amend Compl. Attach. 1 at 20, ECF No. 16-1.  Federal Rule of Evidence 706 "provides the court with discretionary power to appoint an expert witness either on the court's own motion or the motion of a party."  *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996).  "The district court's discretion on whether or not to appoint an expert should be exercised and reflected in a reasoned ruling."  *German v. Broward County Sheriff's Office*, 315 F. App'x 773, 778 (11th Cir. 2009) (per curiam).

Rule 706 is intended to promote accurate factfinding.  *See Ford v. Mercer Cty. Corr. Center*, 171 F. App'x 416, 420 (3d Cir. 2006).  It is "not intended to ensure that indigent plaintiffs have access to expert witnesses in order to make their case."  *Stones v. McDonald*, 7 F. Supp.3d 422, 432 (D. Del. 2014).  "'The most important factor in favor of appointing an expert is that the case involves a complex or esoteric subject beyond the trier-of-fact's ability to adequately understand without expert assistance.'"  *Id.* (quoting 29 Charles Allen Wright & Victor James Gold, *Federal Practice & Procedure* § 6304 (1st ed. 2015)).  Plaintiff has not explained why an expert needs to be appointed in his case, and the issues presented in his case are not so complex as to require a court-appointed expert to assist in screening Plaintiff's Complaint.  Plaintiff's request is therefore **DENIED.**

**IV.       Preliminary Screening**

A.       Standard of Review

Because Plaintiff is a prisoner "seek[ing] redress from a governmental entity or

3

[an] officer or employee of a governmental entity," the Court is required to conduct a preliminary screening of his complaint. *See* 28 U.S.C. § 1915A(a). When conducting preliminary screening under 28 U.S.C. § 1915A, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Id.* (internal quotation marks omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals

4

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

B.     Factual Allegations

Plaintiff's claims arise out of his incarceration at the Georgia State Prison ("GSP") in Reidsville, Georgia and his subsequent transfer to the Georgia Diagnostic and Classification Prison ("GDCP") in Jackson, Georgia. Compl. 9, 11, ECF No. 1. According to the Complaint, in the early morning hours of February 7, 2014, Plaintiff was approached by Defendant Johnson, a male prison lieutenant, and five other guards for a cell search. *Id.* at 9. As part of the search, Defendant Johnson required Plaintiff to undergo a visual cavity inspection. *Id.* Plaintiff informed Defendant Johnson that he was a practicing Muslim and that he believed the request for a cavity search was "of a homosexual nature," and he asked to be examined by a metal detector or x-ray. *Id.* Plaintiff alleges that Defendant Johnson then handcuffed Plaintiff and "rubbed his hand in a downward and upward stroking motion between the plaintiff's buttocks and stated 'That's for calling me gay.'" *Id.*

5

Plaintiff subsequently informed prison sergeant Defendant Jane Doe that Defendant Johnson "had just touched him in a sexual manner which was inappropriate and humiliating." *Id.* Plaintiff alleges that Defendant Jane Doe did not permit him to speak with prison medical or Prison Rape Elimination Act ("PREA") staff about the incident and also informed Defendant Johnson about Plaintiff's allegations. *Id.* In retaliation, Plaintiff alleges Defendant Johnson planted contraband in Plaintiff's cell, left Plaintiff's personal items "in disarray," and "manufactured a fraudulent disciplinary report of the incident." *Id.* Approximately a week after the incident, Plaintiff was examined by a prison nurse and permitted to speak with a PREA investigator. *Id.* Plaintiff contends that Defendant Johnson was present during this interview and "made several comments that deterred the plaintiff from sharing and going forward with the complaint on an institutional level at that time." *Id.* at 10. Plaintiff also contends he spoke with a mental health counselor about the incident and was placed on "mental health caseload" by Defendant West, the mental health director. *Id.* Plaintiff contends, however, that he never received any mental health treatment. *Id.*

Plaintiff was ultimately convicted of wrongdoing in the disciplinary hearing regarding the allegedly falsified disciplinary report against him. *Id.* Plaintiff contends his due process rights were violated during the hearing by hearing officer Jane Doe, apparently because he was not permitted to view security footage of the incident. *Id.* As a result of the hearing, Plaintiff was sentenced to 90 days restriction of privileges, 28 days in isolation, and a disciplinary fee. *Id.*

In the following months, Plaintiff was subjected to several other cell searches. *Id.* On May 14, 2014 around 1:55 AM, "without warning, five (5) or six (6) correctional officers opened [Plaintiff's] cell door and rushed into the cell wearing riot gear." *Id.* Plaintiff contends he "was awakened by intense and extreme shocks to his entire upper body coming from an electronic riot shock-shield." *Id.* Plaintiff alleges that Defendant Davis, a CERT-team sergeant, shocked Plaintiff "numerous times." *Id.* Plaintiff also alleges that Defendant Shoemaker aimed "a pepper ball gun within inches of the plaintiff's face and yelled, 'I wish you would try to buck.'" *Id.* Plaintiff contends other unnamed CERT-team officers "grabbed and roughly threw him from the bed to the floor causing his head to hit the concrete floor." *Id.* Plaintiff was again subjected to a visual cavity search, placed in another inmate's dirty clothing, and transported to GDCP. *Id.* at 11. Plaintiff further contends that he encountered unit manager Defendant Deloach and major Defendant Smith a few feet away from his cell after this incident and asked these Defendants if they had observed what happened to him and told them he needed medical treatment. *Id.* Neither Defendant assisted him. *Id.* Plaintiff further contends that officials at GSP stole or destroyed his personal property. *Id.*

Once Plaintiff arrived at the GDCP a few hours later, he underwent another strip search and was examined by Defendant Adair, a GDCP nurse. *Id.* Plaintiff contends Defendant Adair did not provide Plaintiff with any treatment although Plaintiff informed her he had been sexually assaulted and showed her physical injuries suffered as a result of the cell extraction. *Id.* The next day, Defendant Deputy Warden Powell, Counselor Goody, and John Doe, a CERT-team sergeant, performed a classification hearing. Suppl.

7

Compl. 2, ECF No. 15.  Plaintiff was informed that he would be assigned to the "punitive Tier III Segregation System Program without explanation." *Id.*  While at GDCP, Plaintiff alleges that he also attempted to grieve the sexual assault perpetrated by Defendant Johnson at GSP, but Counselor Goody would not give him a grievance receipt and Defendant Lisa Fountain, an interim manager at the Georgia Department of Corrections ("GDOC") would not respond. *Id.*

Plaintiff next alleges that he slipped and fell in the shower in his cell at GDCP and that prison officials did not timely respond to help him. *Id.*  Instead, approximately an hour after his fall, CERT-team officers entered his cell "and with full-body weight, jumped down on the plaintiff with riot shields, aggravating and causing injury." *Id.*  Plaintiff contends he was shackled and handcuffed "improperly" and taken to medical, where Defendant Adair examined him and provided him with "a medication shot of pain reliever" but no further treatment. *Id.*  Plaintiff alleges he was "unable to move due to the injuries" for the next five days and that Defendant Burnside, a prison doctor, "denied him adequate medical treatment during all follow up appointment[s] concerning his serious injuries." *Id.*  Plaintiff also alleges that the GDOC medical director, Defendant Lewis, has denied him the ability to see a dentist for nineteen months despite her knowledge that "gum[] disease can turn into heart problem[s]." Mot. Am. Compl. Attach. 1 at 9.

Plaintiff further contends that he has been denied proper access to the law library at GDCP. *Id.*  Plaintiff alleges that Defendant Young, the law librarian, "is inadequately trained in law and plays no role in assisting the plaintiff in litigation and appeals." Compl. 12.  Plaintiff contends that as a result of the denial of access to the law library, he

lost his state habeas corpus case.  Mot. Am. Compl. Attach 1 at 2.  Plaintiff additionally alleges that he has been deprived of the right to attend various Islamic religious services. Compl. 12.  Plaintiff does not specify who has denied him this right.

Finally, Plaintiff alleges that he has been confined in punitive isolation for more than three years total.  *Id.* at 13.  Plaintiff alleges that his cell at GDCP has only "35 feet of unencumbered floor space" and no access to outside air.  *Id.*  Plaintiff further states that Plaintiff receives recreation time only twice per week and that conditions in the isolation cells are "deplorable," and constitute an "atypical and significant hardship on the plaintiff."  *Id.*  Plaintiff has also filed a motion to amend his Complaint in which he elaborates on the conditions to which he has been subjected while in isolation.  More specifically, Plaintiff alleges he is unable to complete mandated classes required by the parole board for eligibility but that inmates confined to general population are not so restricted.  Mot. Am. Compl. Attach. 1 at 10.  Plaintiff alleges that as a general population inmate, he would also have regular contact visits, access to the law library and religious activities and services, the ability to play organized sports and interact with other prisoners, and six hours a day of recreation time.  *Id.* at 12.

In addition to describing the conditions of confinement in segregation (or "Special Management Units" ("SMUs")), Plaintiff also contends that Defendants Chatman, Toole, and Paul failed to conduct any form of review regarding Plaintiff's segregation from September 2012 through May 2014.  Mot. Am. Compl. Attach. 1 at 3.  Plaintiff acknowledges a classification hearing was conducted in May 2014, but states it was a "sham" without notice to Plaintiff or his mental health workers, documentation provided

after the hearing, or explanation as to why Plaintiff's segregation continued or how long it would last. *Id.* at 3-4. Plaintiff states the "sham" hearings have continued through November 2015. *Id.* Plaintiff further alleges he has attempted to challenge these classification decisions with various prison and state officials, but to no avail. *Id.* at 4. He also contends that he is routinely deprived of notice and of the opportunity to present evidence in his favor at these hearings. *See, e.g., id.* at 8.

In sum, Plaintiff contends that prison officials have harassed him by conducting cavity searches and cell searches; failed to provide him with adequate medical treatment; denied him access to the courts; subjected him to retaliation; denied his religious rights; and improperly sentenced him to an "SMU/Tier III" sentence. Compl. 13-14. Plaintiff contends these actions violated various constitutional rights, and as a result he seeks declaratory and injunctive relief, compensatory damages, punitive damages, and all costs in this action. *Id.* at 14-15.

C.     <u>Plaintiff's Claims</u>

i.     *Claims against Doe Defendants*

As a preliminary matter, Plaintiff alleges that a number of "Doe" Defendants violated his constitutional or statutory rights. Generally, however, "fictitious party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam). The one exception to this rule is when the plaintiff's description of the defendant is so specific that the party may be identified for service even though his actual name is unknown. *See id.* (citing *Dean v. Barber*, 951 F.2d 1201, 1215-16 (11th Cir. 1992)). Therefore, to proceed against an unnamed defendant, a

10

plaintiff must provide a "description of some kind which is sufficient to identify the person involved so that process can be served." *Dean*, 951 F.2d at 1216.

Plaintiff's pleadings do not contain a sufficient description of any of the Doe Defendants so that they may be identified for service, and it is often unclear which Doe Defendant is being associated with which alleged constitutional violation.  It is therefore **RECOMMENDED** that all claims against the Doe Defendants be **DISMISSED without prejudice**, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim.  If, however, Plaintiff later learns the name of these parties during discovery, Plaintiff may move to amend and seek to add them as parties at that time.[1]

> ii.     *Sexual Assault and Retaliation Claims against Defendant Johnson*

Plaintiff has alleged that Defendant Johnson "sexually assaulted" him by inappropriately touching and taunting him during a body cavity search.  It is well-established that "severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment." *Boxer X*, 437 F.3d at 1111.  A prisoner must allege more than a *de minimis* injury in order to state an actionable constitutional claim.  *See id*. In this case, Plaintiff alleges that Defendant Johnson secured him in handcuffs, stroked the area between Plaintiff's buttocks, and made a sexual comment to Plaintiff.  Compl. 9.

---

[1] Plaintiff's claims against the unnamed or "Doe" Defendants include (1) claims regarding investigators John or Jane Does' interviews with Plaintiff and hearing officer Jane Doe's handling of Plaintiff's disciplinary hearing (Compl. 10, 11); (2) any excessive force claims against the CERT team Doe Defendants, *id.*; *see also* Suppl. Compl. 2; (3) any claims that unnamed prison officials conducted body cavity searches in "an abusive manner;" *see, e.g.,* Compl. 11; (4) claims against any Doe Defendants who participated in Plaintiff's classification hearings, *see, e.g.,* Suppl. Compl. 2; and (5) any claims against "Psychiatric physician John Doe," *id.*

Plaintiff further alleges he sought medical treatment and to speak with PREA staff as a result of the incident. *Id.* Construing Plaintiff's allegations liberally, as the Court must at this stage, the undersigned finds these allegations sufficient to permit Plaintiff's Eighth Amendment claims against Defendant Johnson to proceed for further factual development. *See, e.g., Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999) (finding the alleged sexual assaults "would constitute more than *de minimis* injury if they occurred"); *see also* O.C.G.A. § 16-6-22.1 (defining "sexual battery" as "intentionally mak[ing] physical contact with the intimate parts of the body of another person without the consent of that person," and defining "intimate parts" as including the "buttocks of a male or female").

Plaintiff also contends that Defendant Johnson retaliated against him for complaining about the alleged sexual assault. Discipline imposed in retaliation for a prisoner's exercise of a constitutionally protected right may be actionable under § 1983. *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (per curiam). Generally speaking, to prove a retaliation claim an inmate needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). At this stage, Plaintiff's allegations that Defendant Johnson planted contraband in Plaintiff's cell, left it "in disarray," and falsified a disciplinary report against Plaintiff in retaliation for Plaintiff's attempts to complain about Defendant Johnson's conduct are also sufficient

to permit Plaintiff's retaliation claims against Defendant Johnson to proceed for further factual development.

    *iii.*      *Excessive Force Claims against Defendants Davis and Shoemaker*

  Plaintiff next alleges that Defendant Davis entered his cell around 2:00 AM while Plaintiff was sleeping and shocked Plaintiff repeatedly with an electronic riot shock-shield, causing Plaintiff to "be momentarily paralyzed," suffer convulsions, urinate upon himself, and experience fear and "extreme pain." Compl. 10. Plaintiff also alleges that Defendant Shoemaker held a pepper-ball gun inches away from Plaintiff's face and yelled at him. *Id.*

  Force that is applied to a prisoner "maliciously and sadistically to cause harm" can violate the Eighth Amendment and give rise to claims under § 1983. *See, e.g., Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). Plaintiff's allegations that Defendant Davis shocked him while he was sleeping, without apparent reason or justification, thereby causing Plaintiff injury, are sufficient to permit his Eighth Amendment claims to proceed for further factual development. *See, e.g., Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001) ("[T]he *activation* of a stun gun may violate the Eighth Amendment if used sadistically or maliciously.").

  Construing Plaintiff's allegations liberally, as the Court must at this stage, the undersigned also cannot say that Plaintiff's claims against Defendant Shoemaker are wholly without merit at this time. The Eleventh Circuit has observed that "an excessive force claim for immediate, malicious threat of electrical shock" may not "be indisputably meritless." *Bilal*, 251 F.3d at 1349. Plaintiff has alleged that after waking Plaintiff,

Defendant Shoemaker threatened him with a pepper-ball gun in an arguably intentionally intimidating and hostile manner. The undersigned will permit these claims to go forward for further factual development.

*iv.     Failure to Intervene Claims against Defendants Deloach and Smith*

Plaintiff states that after the alleged assault by Defendants Shoemaker and Davis, he encountered Defendants Deloach and Smith "a few feet" from his cell. Compl. 11. Plaintiff further alleges that Defendants Deloach and Smith were near "several other unidentified officers holding a surveillance camera." *Id.* Plaintiff claims he asked Defendants Deloach and Smith, "Did y'all see what they just did to me? And why are you allowing this to happen?" *Id.* Defendant Deloach responded with, "This comes with the territory," and Defendant Smith responded with, "Stop complaining and crying, you've been locked up long enough to know the drill." *Id.*

The Eleventh Circuit has held that "'[i]t is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983. Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.'" *Skrtich*, 280 F.3d at 1302 (quoting *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441-42 (11th Cir. 1985)). Plaintiff does not allege, however, that either Defendant Deloach or Smith actually saw use of excessive force as it was occurring or were in any position to prevent the use of excessive force or stop it once it began. "The plaintiff has the burden to demonstrate that the defendant was in a position to intervene but failed to do so." *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir.

14

2012) (per curiam); *see also Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008).

Because Plaintiff has failed to allege facts sufficient to meet this burden, Plaintiff's

failure-to-intervene claims against Defendants Deloach and Smith must be **DISMISSED**

**without prejudice.**

> v.    *Denial of Medical Treatment*

Plaintiff next alleges that various Defendants denied him proper medical

treatment.   More specifically, Plaintiff contends that mental health director Defendant

West placed him on a "mental health caseload" but failed to ensure he received any

mental health counseling, *id.* at 10; Defendants Deloach and Smith denied him medical

treatment after he was shocked with the riot shield device and thrown to the floor, *id.* at

11; Defendant Adair failed to provide him medical treatment when he first arrived at

GDCP after she examined him and observed his purported injuries, *id.* at 11; Defendant

Adair later failed to provide him anything more than pain medication after he slipped and

fell in the shower at GDCP, Suppl. Compl. 2; Defendant Burnside failed to treat him at

all during his follow-up appointments after the fall, *id.*; and GDOC medical director

Defendant Lewis failed to permit him to see a dentist for 19 months, despite medical

research showing a link between gum disease and heart problems, Mot. Am. Compl.

Attach. 1 at 9.

A prisoner who demonstrates that a prison official was deliberately indifferent to

his serious medical needs can state a constitutional claim cognizable under 42 U.S.C. §

1983.   *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).   "To show that a prison

official acted with deliberate indifference to serious medical needs, a plaintiff must

satisfy both an objective and a subjective inquiry." *Id.* at 1243. A plaintiff must first "set forth evidence of an objectively serious medical need," and must also "prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.* In other words, prison officials must both "know of and then disregard an excessive risk to the prisoner." *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam). "Mere negligence in diagnosing or treating a medical condition, or even medical malpractice, does not state an Eighth Amendment claim of medical mistreatment." *Id.*

Plaintiff has failed to establish that any named Defendant was deliberately indifferent to his serious medical needs. First, Plaintiff failed to establish that any medical issues he suffered as a result of the forcible cell extraction, the slip and fall, or failure to see a dentist were, in fact, "serious medical needs." A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted). "In either of those situations, the medical need must be 'one that, if left unattended, 'pos[es] a substantial risk of serious harm.'" *Id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)) (alteration in original). Plaintiff has stated that his only visible injuries from the incident were a "large knot" or contusion on his head and lacerations on his wrists and ankles from the restraints. Compl. 11. Plaintiff does not explain why these injuries were so obvious that any Defendants would have recognized that they needed immediate medical attention, or that they posed a risk of serious harm if left unattended. Similarly,

16

although Plaintiff contends he suffered "serious injuries" as the result of his slip-and-fall in the shower, Plaintiff has not explained the nature of those injuries.  With respect to his claims against Defendant Lewis, Plaintiff never even alleges that he personally suffered from gum disease or any dental condition that required treatment.

Additionally, Plaintiff does not allege that each Defendant acted with deliberate indifference to any serious medical need Plaintiff might have had.  For example, Plaintiff contends that Defendant West assigned him to a "mental health caseload," but Plaintiff did not receive any treatment while classified as a mental health inmate.  This allegation does not demonstrate that Defendant West actually knew that Plaintiff was not receiving the treatment that he should have received as part of the "mental health caseload." Plaintiff also fails to allege that he told Defendant Adair or any other Defendant that he was suffering from cardiac pressure, intense headaches, pain, or the other not-readily-observable symptoms he now lists in his Complaint.

Plaintiff further acknowledges that he received at least some medical treatment for the injuries he suffered.  For example, although Plaintiff claims that Defendants Deloach and Smith did not provide him with medical care immediately after he was shocked and removed from his cell, Plaintiff did receive an examination by Defendant Adair less than six hours later.  Compl. 10-11.  Plaintiff has not alleged sufficient facts to allow the Court to determine that any injuries he suffered during this incident required immediate treatment; nor does he allege that this delay in treatment caused him any additional pain or exacerbated any of his injuries.  *Cf., e.g., Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) (per curiam) (holding that "a deliberate delay on the order of hours in

providing care for a serious and painful broken foot is sufficient to state a constitutional claim").  Plaintiff also acknowledges that Defendant Adair examined him and provided him with pain medication after his slip and fall in the shower, and he further acknowledges that Defendant Burnside saw him for follow-up after his fall.  (ECF No. 15 at 2.)  Although Plaintiff contends that neither of these Defendants provided him the treatment he desired, Plaintiff has not explained what symptoms he was experiencing, whether he was diagnosed with any particular injury, whether he still suffers effects from his injury, and what kinds of treatment he expected to receive but did not.  Plaintiff's perceived dissatisfaction with the amount of treatment he received in the prison—particularly in light of the lack of factual specificity about his medical conditions—is not sufficient to state a medical deliberate indifference claim.  *See, e.g., Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although [the prisoner] may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference.").

In sum, Plaintiff has failed to state a claim upon which relief may be granted as to each of his claims that various Defendants denied him adequate medical care.  As such, the undersigned **RECOMMENDS** that these claims be **DISMISSED without prejudice.**

### vi.      *Claims Regarding Grievances*

Plaintiff alleges that certain Defendants or other prison officials failed to respond to his grievances or otherwise did not appropriately handle them.  *See, e.g.,* Suppl. Compl. 2 (counselor failed to give Plaintiff a grievance receipt; Defendant Fountain failed to respond to grievance).  To the extent Plaintiff seeks to raise an independent

claim that such action somehow violates his constitutional rights, these allegations fail to state a claim.  Prisoners have no constitutionally-protected liberty interest in accessing a prison's grievance procedure.  *Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (per curiam); *Thomas v. Warner*, 237 F. App'x 435, 438 (11th Cir. 2007) (per curiam) ("Plaintiff's allegations that prison officials failed to comply with the prison's voluntary grievance procedures does not state a due process claim.").  Accordingly, the undersigned **RECOMMENDS** that any claims related to any Defendant's alleged mishandling of the prison's grievance procedures be **DISMISSED without prejudice**

> *vii.*        *Claims Regarding Destruction or Seizure of Personal Property*

Plaintiff also alleges that "for no reason other than harassment," prison officials at GSP "held, stole, and maliciously destroyed a quantity of the plaintiff's personal property," to include his wedding band, a ring, a necklace, a religious pendant, prescription eyeglasses, CD player, headphones, adapter, watch, legal materials, and letters.  Compl. 11.  Plaintiff also contends that Defendants Chatman, Logan, Powell, Bishop, and McCloud "embezzled" money from his prison trust fund account to pay for an unfounded property loss claim.  Mot. Am. Compl. Attach. 1 at 2.  To the extent Plaintiff is alleging that the seizure of any of this personal property violated his due process rights, such claims would fail.  It is well established that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  "[T]he state's action is not complete until and unless it provides or

refuses to provide a suitable postdeprivation remedy." *Id.* "Georgia provides a civil cause of action for the wrongful conversion of personal property." *Moore v. McLaughlin*, 569 F. App'x 656, 658 (11th Cir. 2014) (per curiam) (citing O.C.G.A. § 51-10-1). The Eleventh Circuit has "held that this cause of action constitutes a suitable postdeprivation remedy for procedural due process violations." *Id.* Plaintiff has not alleged that he has attempted to pursue a civil action based on Defendants' actions or that such a remedy is not available to him.[2] The state's action cannot be considered to be complete; thus, to the extent Plaintiff is attempting to assert a procedural due process claim based on the deprivation of his personal property, the undersigned **RECOMMENDS** that such claims be **DISMISSED without prejudice.**

> ### viii.     Access to Courts Claims

Plaintiff alleges that some unspecified Defendants have denied him "physical access to the law library, law computer, and all law books," and that he is only permitted to receive two photocopied cases per week. Suppl. Compl. 2. Plaintiff further alleges that Defendant Young, the prison law librarian, "plays no role in assisting the plaintiff in litigation and appeals." Compl. 12. Plaintiff's allegations can be construed as attempting to state an access-to-courts claim.

"Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir.

---

[2] Plaintiff also acknowledges that some of his personal property was returned to him when he arrived at GDCP, but contends other items, such as his prescription eyeglasses, were not. Suppl. Compl. 2.

2003) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002)). "To have standing to seek relief under this right, however, a plaintiff must show actual injury by 'demonstrat[ing] that a nonfrivolous legal claim ha[s] been frustrated or . . . impeded.'" *Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 797 (11th Cir. 2003) (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)) (alterations and omission in original).

In this case, Plaintiff alleges he lost his state habeas corpus case as the result of being unable to obtain adequate access to the law library. Mot. Am. Compl. Attach. 1 at 2. Plaintiff has not, however, alleged who at the prison actually denied him access to the law library and its resources, and it is further unclear when Plaintiff's state habeas case was denied and whether any named Defendant actually caused this injury by depriving him of access to the law library during the time that case was pending. Plaintiff also fails to articulate how, specifically, the alleged denial of access to all the legal resources he desired caused him to lose his state habeas case.

Plaintiff does allege that Defendant Young is "inadequately trained in law and plays no role in assisting the plaintiff in litigation and appeals." Compl. 12. Plaintiff is not necessarily entitled to the assistance of someone trained in the law *and* access to the law library, however. *See, e.g., Hooks v. Wainwright*, 775 F.2d 1433, 1435 (11th Cir. 1985) (noting that Supreme Court affirmed lower courts' holdings that "the State was not constitutionally required to provide legal assistance as well as libraries"). And again, Plaintiff does not actually allege that it was Defendant Young's actions (or inaction) that caused him to lose his state habeas case, as it is unclear whether Plaintiff was even housed at GDCP where Defendant Young works when Plaintiff lost his state habeas case.

In sum, Plaintiff's access-to-courts claims are at this point simply too vague to state a claim upon which relief may be granted. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 351 (holding that because there is no "abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense"). As such, the undersigned **RECOMMENDS** that Plaintiff's access-to-courts claims be **DISMISSED without prejudice.**

ix.     *Religious Freedom Claims*

Plaintiff contends, without any factual detail, that unspecified Defendants have denied him "the right to attend any and all video/television participation in Islamic services." Compl. 12. Plaintiff's claims that Defendants interfered with the exercise of his religious beliefs can be construed as claims for violations of Plaintiff's First Amendment right to religious freedom and Section 3 of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Plaintiff has failed to identify which of the nearly two dozen Defendants in this case actually denied him the ability to participate in these services, however. It is therefore **RECOMMENDED** that Plaintiff's religious freedom claims be **DISMISSED without prejudice.** *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation).

x.     *Claims Regarding Tier III Classification*

Finally, Plaintiff contends that various Defendants violated his due process rights by confining him to long-term segregation without the proper procedural protections. It

is well-settled that the Due Process Clause of the Fourteenth Amendment protects against deprivations of "life, liberty, or property without the due process of law."  U.S. Const. amend. XIV.  In order to establish a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must show that a person acting under color of state law deprived him of a constitutionally protected liberty or property interest without constitutionally adequate process.  *See, e.g., Foxy Lady, Inc. v. City of Atlanta*, 347 F.3d 1232, 1236 (11th Cir. 2003) (per curiam).

The Due Process Clause "does not directly protect an inmate from changes in the conditions of his confinement" or create a constitutionally-protected interest "'in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters.'" *Chandler v. Baird*, 926 F.2d 1057, 1060 (11th Cir. 1991) (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)).  Thus, to state a due process claim, a prisoner must allege more than that he has been confined in segregation without due process.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).  The prisoner must also show that the nature of his confinement (i.e., the conditions or duration) gives rise to a protected liberty interest and thus otherwise entitles him to some measure of due process. *See id.* at 486-87.

Generally, "[w]hen an inmate is placed in conditions more restrictive than those in the general prison population, whether through protective segregation . . . or discretionary administrative segregation, his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time." *Earl v. Racine Cty. Jail*, 718 F.3d 689, 691 (7th

23

Cir. 2013) (per curiam). A relatively short term of segregation will rarely give rise to a prisoner's liberty interest in the absence of exceptionally harsh conditions. *Compare Sandin*, 515 U.S. at 476 (placement in segregation for term of thirty days did not give rise to protected liberty interest) *with Wallace v. Hamrick*, 229 F. App'x 827, 830-31 (11th Cir. 2007) (placement in administrative segregation for 28 days without hot water, adequate ventilation, or opportunity to exercise while awaiting disciplinary hearing supported due process claim).

On the other hand, a prisoner's long-term or indefinite detention in administrative or disciplinary segregation may, depending on the circumstances, constitute an "atypical and significant hardship" in relation to the ordinary incidents of prison life and therefore require some procedural protections. *See Sandin*, 515 U.S. at 484; *see also Williams v. Fountain*, 77 F.3d 372, 374-75 (11th Cir. 1996); *Jones v. Baker*, 155 F.3d 810, 813 (6th Cir. 1998) (long-term confinement may be constitutionally objectionable depending on the length of or reason for the confinement).

In this case, Plaintiff has alleged that he has been confined in segregation for "1,312 days and ongoing"—more than three and a half years. Mot. Am. Compl. Attach. 1 at 14. He may therefore be entitled to due process protections that he alleges he did not receive. *See Williams*, 77 F.3d at 374 n.3 (finding that a full year of solitary confinement constituted an "atypical and significant hardship" warranting due process protections). Plaintiff also alleges that the conditions of confinement in the SMUs are significantly more harsh than those experienced by inmates in general population. *See, e.g.,* Compl. 13; Mot. Am. Compl. Attach. 1 at 10-12. At the initial screening stage, the Court must

24

construe all allegations liberally in favor of Plaintiff.  Thus, the undersigned cannot at this stage conclude that Plaintiff's claims are entirely frivolous.  *See Al-Amin v. Donald*, 165 F. App'x 733, 736 (11th Cir. 2006) (per curiam) (noting that district court permitted prisoner's due process claims to proceed past frivolity review in part due to the fact that prisoner had been in administrative segregation for thirteen months).

Plaintiff alleges that Defendants Williams, Chatman, McCloud, and Bishop deprived Plaintiff of his constitutional rights at his classification hearings, Compl. 12; that Defendants Chatman, Toole, and Paul never conducted the required review on Plaintiff's classification, Mot. Am. Compl. Attach. 1 at 3; and that Defendants Logan and Powell conducted "sham" classification hearings that violated "due process, policies and rules," *id.* at 4.  Plaintiff has therefore alleged that each of these Defendants personally participated in the decisions to place and keep him in long-term segregation. Accordingly, Plaintiff's due process claims against those Defendants will be permitted to proceed for further factual development.

In addition to the personal involvement claims alleged against the Defendants noted above, Plaintiff also appears to assert claims against various Defendants who serve in a supervisory capacity at the prisons where he has been housed in segregation or at the Georgia Department of Corrections ("GDOC").  Plaintiff contends Defendants Dean, Jacobs, and Upton "are supervisors that are responsible for the management of the Tier III seg. system programs at GDCP-SMU," (Mot. Am. Compl. Attach. 1 at 4) and that Defendants Dean, Bryson, Jacobs, and Upton are responsible for training and supervising the various SMUs in the Georgia prison system and their policies, *id.* at 15.  Plaintiff also

alleges that Defendant Deloach has some responsibility to review, develop, implement, amend, and monitor the SMU programs at Smith State Prison and/or GDCP. *Id.*

Supervisors can only be held liable under § 1983 if they personally participated in the allegedly unconstitutional conduct or if there is a causal connection between their actions and the alleged constitutional violation. *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam). A causal connection can be established if the plaintiff shows

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (internal quotation marks omitted).

Plaintiff does not appear to allege that Defendants Dean, Bryson, Jacobs, Upton, or Deloach personally participated in any specific classification decision affecting Plaintiff's placement or retention in the Tier III segregation program. Plaintiff does allege, however, that these Defendants' policies contributed to his alleged constitutional violations. For example, Plaintiff has alleged that GDOC policies have "place[d him] at risk of extraordinarily long and severely harmful extreme isolation and solitary confinement as punishment," (Mot. to Am. Compl. Attach. 1 at 11), and that these policies and customs are "authorized by [GDOC] top policy making corrections officials," *id.* at 13. Plaintiff also specifically states that the "wardens, deputy wardens,

26

directors, superintendents, and unit managers named as defendants in this action are personally responsible for authorizing and maintaining the policies and customs that resulted in the SMU conditions" described in Plaintiff's pleadings. *Id.* at 16.[3]  Plaintiff further alleges that these policies defining what conduct warrants confinement in the SMU program are unconstitutionally vague, "provide no explicit standard for those who enforce the rules," permit prison officials to impose punishment "arbitrarily and unfairly" on prisoners, and "provide no useful feedback or guidance" on how a prisoner can avoid being placed in the SMU. *Id.* at 7.  Plaintiff also specifically states that Defendant Deloach is responsible for reviewing, developing, implementing, amending, and monitoring the disciplinary policies at the prisons. *Id.* at 15.  Construing Plaintiff's allegations liberally, as the Court must at this stage, the undersigned concludes that further factual development is required as to Plaintiff's due process claims against Defendants Dean, Bryson, Jacobs, Upton and Deloach, and those claims shall proceed.

*xi.*  *Remaining Supervisory Liability Claims*

Finally, contends that Defendants Toole and Paul committed "state supervisory deliberate indifference" by failing "to thoroughly investigate the sexual assault while the Plaintiff remained subject to repetitive threats and sexual verbal abuse by Lieutenant Johnson." Compl. 10.  Plaintiff does not allege that either of these Defendants personally participated in any decision-making regarding these incidents, had any customs or policies that led to any of the constitutional violations alleged by Plaintiff, directed any of

---

[3] Plaintiff identifies Defendant Dean as "Tier Manager," Defendants Upton and Jacob as "Regional Directors" of the GDOC, and Defendant Deloach as a "Unit Manager."

their subordinates to act unlawfully, or knew they were doing so, had an opportunity to act, and failed to stop them. *Hendrix*, 535 F. App'x at 805. As such, the undersigned **RECOMMENDS** that any additional supervisory liability claims against these Defendants be **DISMISSED without prejudice.**

## V.      Conclusion

Based on the foregoing, the undersigned concludes that the following claims should proceed for further factual development: (1) Plaintiff's "sexual assault" and retaliation claims against Defendant Johnson; (2) Plaintiff's excessive force claims against Defendants Davis and Shoemaker; (3) Plaintiff's claims regarding his Tier III classification against Williams, Chatman, McCloud, Bishop, Toole, Paul, Powell, Logan, Bryson, Upton, Jacobs, Deloach, and Dean. The undersigned **RECOMMENDS**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice.** In addition, the undersigned **DENIES** Plaintiff's motion to appoint counsel (ECF No. 9); **DENIES** Plaintiff's request for expert witnesses; and **GRANTS** Plaintiff's motion to amend (ECF No. 16).

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of §

636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff's allegations against Defendants Johnson, Davis, Shoemaker, Williams, Chatman, McCloud, Bishop, Toole, Paul, Powell, Logan, Bryson, Upton, Jacobs, Deloach, and Dean require further factual development, it is accordingly **ORDERED** that service be made on those Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely

dispositive motions as hereinafter directed.  This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.  A party need not serve the opposing party by mail if the opposing party is represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.  If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendants from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.  The deposition of the Plaintiff, a state/county prisoner, may be taken at

any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.  This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.  The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:  except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed

FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

## DIRECTIONS TO CUSTODIAN OF PLAINTIFF

As previously ordered, the Warden of the institution wherein Plaintiff is incarcerated, or the Sheriff of any county where he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the Prison Litigation Reform Act, Plaintiff's custodian is authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.

Collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

**PLAINTIFF'S OBLIGATION TO PAY FILING FEE**

Pursuant to provisions of the Prison Litigation Reform Act, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full; Plaintiff shall continue to remit monthly payments as required by the Prison Litigation Reform Act. Collection from Plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event Plaintiff is released from custody and fails to remit payments.  Plaintiff's Complaint is subject to dismissal if he has the ability to make monthly payments and fails to do so.

**SO ORDERED AND RECOMMENDED**, this 13th day of June, 2016.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE

33